UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re

       SHARON M. COMBES,

                      Debtor.

------------------------------------------------------------x

Chapter 7

Case No. 06-44788-CEC

## DECISION

Appearances:

| | |
|---|---|
| Richard J. McCord, Esq. | Dennis J. O'Sullivan, Esq. |
| Certilman, Balin, Adler & Hyman | 210-13 35th Avenue |
| 90 Merrick Avenue | Bayside, New York 11361 |
| East Meadow, New York 11554 | Attorney for Debtor |
| Chapter 7 Trustee | |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

1

This matter comes before the Court on the motion of Richard J. McCord (the "trustee"), the chapter 7 trustee in this case, objecting to the claimed exemptions of Sharon M. Combes ("Ms. Combes" or the "debtor") of two annuities and seeking to set aside the transfers by which Ms. Combes purchased those annuities. A trial was conducted on this matter, during which the Court heard testimony from the debtor. For the following reasons, the trustee's motion is denied in its entirety.

## Jurisdiction

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 157 and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Background

The following facts are undisputed.

In 1986, Ms. Combes inherited shares of stock of Sears Roebuck, certain bank accounts, and a house from her mother. (Tr.[1] at 13-14.) The debtor sold the stock in the late 1980s or early 1990s, and sold the house in 2000. (Tr. at 10, 13). The debtor invested the money she got from the sale of the Sears Roebuck stock and from her mother's bank account in a brokerage account with Bouchey Financial Group, Ltd. ("Bouchey"). (Tr. at 13, 56.)

On July 24, 2001, Ms. Combes purchased an annuity from Utica National Life Insurance Company for $68,000 (the "First Annuity"). At the time she purchased the First Annuity, her brokerage account with Bouchey was worth approximately $93,000. (Tr. at 13.)

---

[1] "Tr." refers to the transcript of the hearing held on October 1, 2007.

On March 4, 2002, Ms. Combes purchased another annuity from Utica National Life Insurance Company for $56,012.05 (the "Second Annuity," and together with the First Annuity, the "Annuities"). The funds to purchase the Second Annuity were withdrawn from Astoria Federal Savings Bank ("Astoria"), where she had a certificate of deposit worth $56,000. (Tr. at 58; Exhibit 20.) At the time she purchased the Second Annuity, the debtor's brokerage account with Bouchey was worth approximately $84,000. (Tr. at 60; Exhibit 19.) Thereafter, in January 2003, the debtor liquidated her portfolio with Bouchey when it was worth approximately $60,000 because the portfolio was losing value. (Tr. at 12, 60; Exhibit 19.)

On December 9, 2006, the debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. On Schedule B to the petition, the debtor valued the Annuities at $134,886.71, and the remainder of her assets at $1,200. On Schedule C to the petition, the debtor claimed all of her assets as exempt pursuant to 11 U.S.C. § 522(b). On Schedules E and F, the debtor listed a priority tax debt of $800 and general unsecured debts totaling $97,082.

On March 1, 2007, the trustee filed the instant motion. The trustee did not seek to deny the debtor a discharge, and on March 21, 2007, the debtor was granted a discharge.

The deadline for filing proofs of claim expired on July 2, 2007. Three creditors filed proofs of claim totaling $11,679.23.

## Discussion

I. <u>Exemption from the Bankruptcy Estate</u>

Section 522(b) of the Bankruptcy Code provides that a debtor may exempt certain property from the bankruptcy estate. Section 522(d) provides a list of the property that may be exempted.

However, § 522(b)(2) allows a state to prohibit a debtor from claiming the exemptions listed in § 522(d) and require a debtor to apply that state's own exemption scheme. 11 U.S.C. § 522(b)(2).

New York has "opted out" pursuant to § 522(b)(2) and restricts its domiciliaries to the exemptions set forth in the New York Debtor & Creditor Law. N.Y. DEBT. & CRED. LAW § 282. Pursuant to the New York Debtor & Creditor Law, a debtor may exempt "annuity contracts and the proceeds and avails thereof as provided in section three thousand two hundred twelve of the insurance law." N.Y. DEBT. & CRED. LAW § 282. Insurance Law § 3212(d)(1), in turn, provides that "[t]he benefits, rights, privileges and options, which, under any annuity contract are due or prospectively due the annuitant, who paid the consideration for the annuity contract, shall not be subject to execution." N.Y. INS. LAW § 3212(d)(1). However, Insurance Law § 3212(e)(2)(a) provides that "the amount of . . . consideration paid with actual intent to defraud creditors . . . together with interest on such amount, shall enure to the benefit of creditors." N.Y. INS. LAW § 3212. Therefore, an annuity that was purchased with the actual intent to hinder, delay, or defraud creditors may not be exempt from a bankruptcy estate. See In re Lynch, 321 B.R. 114, 119 (Bankr. S.D.N.Y. 2005); In re Robinson, 271 B.R. 437, 439 (Bankr. N.D.N.Y. 2001). Pursuant to Bankruptcy Rule 4003, the trustee bears the burden of proving by a preponderance of the evidence that an annuity was purchased with such intent. Fed. R. Bankr. P. 4003(c). See also In re Pless, 202 B.R. 664, 666 (Bankr. N.D.N.Y. 1996).

Since actual intent is rarely shown by direct evidence, a court will conduct a "badges of fraud" analysis, which examines whether there is circumstantial evidence of actual intent. See Sharp Int'l Corp. v. State St. Bank and Trust Corp. (In re Sharp Int'l Corp.), 403 F.3d 43, 56 (2d Cir. 2005); Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582 (2d Cir. 1983); In re Keating, No. 05-

CV-5921 (JS), 2006 WL 2690239, at *3 (E.D.N.Y. September 18, 2006). A court will consider a number of factors to determine whether an annuity was purchased with actual intent to hinder, delay, or defraud creditors, including:

(1) whether there was fair consideration paid;

(2) whether the debtor was rendered insolvent as a result of the transfer;

(3) the amount of the transfer;

(4) whether there is a genuine purpose for the transfer and the filing of bankruptcy;

(5) the length of time between the transfer and the filing of bankruptcy;

(6) the amount of nonexempt property which the debtor has after the transfer; and

(7) the debtor's failure to provide evidence and to testify with significant preciseness as to the pertinent details of his activities shortly before filing the bankruptcy petition.

Keating, 2006 WL 2690239, at *3; Robinson, 271 B.R. at 441; In re Moore, 177 B.R. 437, 442 (Bankr. N.D.N.Y. 1994).

The purpose of exemption laws is "to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all his nonexempt property, the debtor will not be left destitute and a public charge." Lynch, 321 B.R. at 116 (quoting 942 H.R. Rep. No. 595, 95th Cong., 1st Sess. (1977) *reprinted in* 1978 U.S. Code Cong. & Admin. News, 5797, 6087). Furthermore, "exemption statutes are to be liberally construed." Pless, 202 B.R. at 666.

In light of this purpose, it has recently been held that "[u]tilizing available exemptions and

engaging in pre-petition planning, without more, is not indicative of actual intent to defraud creditors." Keating, 2006 WL 2690239, at *5. This is consistent with the Second Circuit's holding that an "exchange by the bankrupt, on the eve of bankruptcy, of non-exempt property for exempt property" does not, by itself, warrant a finding of actual intent to hinder, delay, or defraud creditors. See In re Adlman, 541 F.2d 999, 1004 (2d Cir. 1976) (discussing whether there was actual intent to hinder, delay, or defraud creditors in the context of a motion to deny a debtor a discharge); see also Lynch, 321 B.R. at 119; Moore, 177 B.R. at 442.

    A.        Fair Consideration and Amount of the Transfers

The trustee argues that the debtor did not receive fair consideration in exchange for the transfers to the Annuities because the debtor was unable to reach the funds at any time without a penalty.

The debtor purchased the Annuities for a total of $124,000, and she was guaranteed distributions over the period of the Annuities pursuant to their terms. The Annuities were worth over $134,000 at the time the debtor filed for bankruptcy. Even if it were true that she could not reach these funds without a penalty, this is not a proper basis upon which to conclude that the transfers were not for fair consideration.

The debtor testified that she purchased the Annuities because they offered a higher rate of interest than she would have received had she deposited the funds in a bank account at that time. (Tr. at 39.) The trustee argues that she could have received the same interest rate had she placed the funds in a savings account. However, whether or not she could have gotten the same interest rate, or a better deal, elsewhere is not a basis on which to find that she did not receive fair consideration. It should be noted that the trustee has not provided any evidence that she could have received the

same interest rate had she placed her money in a savings account. For these reasons, this Court cannot find that the transfers were not in exchange for fair consideration. It should be noted that the trustee, in his memorandum of law, originally conceded that the debtor received fair consideration in exchange for the monies transferred to purchase the Annuities. See Mem. of Law in Supp. at 6.

        B.        <u>Insolvency and the Amount of Non-Exempt Property after the Transfer</u>

The trustee argues that the debtor was insolvent or rendered insolvent as a result of the transfers to the Annuities. The trustee relies on the debtor's Schedule F and argues that she had incurred debt totaling $56,817 prior to the purchase of the Annuities. The trustee reaches this conclusion by adding the entries on Schedule F reflecting debt incurred prior to 2002; however, it is impossible to determine from Schedule F how much of these amounts (which the debtor testified were taken from a pre-bankruptcy credit report, see Tr. at 17) were owed in March 2002 and how much is attributable to interest accrued after that date. The only other evidence submitted on this point consists of credit card statements from periods around the time the debtor bought the Annuities, which reflect approximately $20,000 owed at the time the Second Annuity was purchased. It should also be noted that the credit card statements also showed substantial payments made on this debt after the Second Annuity was purchased. See Exhibits 23, 24.

However, even if the debtor owed $56,817 at the time she purchased the Annuities, the evidence does not show that the debtor was insolvent or rendered insolvent therefrom. The debtor testified that after she purchased the First Annuity, the debtor had a brokerage account with Bouchey worth $93,000. (Tr. at 13.) This testimony is supported by the Bouchey statement of activity which indicates that as of August 31, 2001, her portfolio's value was $93,814.08. See Exhibit 19. The debtor also had a certificate of deposit with Astoria worth $56,000 in December 2001, five months

after the purchase of the First Annuity.  See Exhibit 20.

Furthermore, the debtor testified that at the time of the purchase of the Second Annuity, her brokerage account with Bouchey was worth approximately $84,000.  (Tr. at 58.)  This testimony is supported by a Bouchey statement of activity for the period of March 1, 2002 through March 31, 2002.  See Exhibit 19.

Therefore, based on her remaining assets, it is clear the debtor was not insolvent at the time she purchased either annuity or rendered insolvent by those transfers.  Furthermore, these remaining assets were nonexempt assets that could have been reached by her creditors to satisfy her debts in full.

        C.        Purpose for the Transfer and the Filing of Bankruptcy; Length of Time Between the Transfer and the Filing of Bankruptcy

The debtor testified that she purchased the Annuities on the advice of a person named Maryann DiGiovanni, a MetLife insurance agent.  (Tr. at 14, 60.)  She testified that Ms. DiGiovanni advised her to not to "put all her eggs in one basket" and that the Annuities offered a higher rate of interest than the banks did at that time  (Tr. at 14, 39.)  The debtor testified that she was unaware that the Annuities would be beyond the reach of creditors.  (Tr. at 15.)  She testified that she purchased the Annuities at the time that her portfolio with Bouchey was losing value.  (Tr. at 31-32.)

The debtor also testified that she had creditors at the time she purchased the Annuities.  (Tr. at 15.)  However, she was not sure of the amounts owed to each creditor or the dates those debts were incurred.  (Tr. at 16-18.)  Although the debtor acknowledged the credit card debt listed on Schedule F of approximately $25,000 for the period prior to July 2001, she also testified that those amounts were due to interest and late fees, and that she was able to pay all of her bills in 2002 when she purchased the Annuities.  (Tr. at 29-30, 35-36.)  This testimony is supported by documentary

evidence indicating that she paid at least the minimum amounts due on her credit card bills from August 2001 until May 2002. See Exhibits 22 and 23. She testified that she stopped paying her bills after she lost her full time job in 2003, which was also after her investments in the stock market lost value. (Tr. at 30, 35, 62.)

The debtor also testified that she was unaware of two money judgments entered against her. (Tr. 37-39.) She testified that she received a letter from a collection agency which "threw [her] into a panic" and prompted her to file for bankruptcy relief. (Tr. at 40.)

It is important to note the debtor's background at this juncture. The debtor is 59 years old. Her mother kept her at home until she was 30 years old. (Tr. at 6.) She went to school for one or two years when she was a child. (Tr. at 6.) She taught herself how to read and write by watching television. (Tr. at 8.)

Given her lack of education, it is entirely credible that the debtor relied heavily on the financial advice of her investment company and Ms. DiGiovanni. Furthermore, she purchased the First Annuity over five years prior to filing bankruptcy, and purchased the Second Annuity more than three and a half years prior to filing for bankruptcy, while she had sufficient funds to pay all her creditors in full.

This Court also finds that the debtor's testimony that she stopped paying her credit cards because she lost her job is credible. It is also credible that she was unaware of the money judgments against her, and that she filed for bankruptcy because of the notice from the collection agency. In light of the debtor's background, the timing of the transfers, and the significant amount of nonexempt assets remaining after the purchase of each of the Annuities, it is clear that the debtor did not purchase the Annuities and file for bankruptcy in a scheme to shield those funds from her creditors.

D.   <u>Debtor's failure to provide evidence and to testify with precision as to the pertinent details of her activities shortly before filing the bankruptcy petition</u>.

The trustee argues that the debtor was unable to explain how she incurred the debt listed on Schedule F other than "it simply accumulated over time." The trustee also asserts that the debtor failed to provide documents in support of this testimony.

The debtor testified that she gave whatever records she had to her attorney. (Tr. at 42.) She testified that she still had some documents relating to the brokerage account with Bouchey. (Tr. at 42.) Regarding other records requested by the trustee, the debtor testified that she moved a few times within the last number of years, and either threw out bank and credit card statements or left them behind when she moved. (Tr. at 42.) The debtor testified that the missing records would have helped her answer the trustee's questions regarding when she incurred her pre-petition debt and when she opened and closed some credit card accounts. (Tr. 46 - 51.)

This last factor of the analysis examines whether the debtor was able to explain her activities "shortly before the filing of the petition." <u>Keating</u>, 2006 WL 2690239, at *3; <u>Robinson</u>, 271 B.R. at 441; <u>Moore</u>, 177 B.R. at 442. The debtor testified with reasonable precision about the purchase of the Annuities years before her bankruptcy filing, which is the time period relevant to a determination whether the Annuities were purchased with actual intent to hinder, delay or defraud creditors. The debtor's testimony is credible that within the few years before she filed for bankruptcy relief, she lost her job and her debts accumulated over time.

The documentary evidence, including statements from Bouchey, Astoria, and various credit cards, supports the debtor's testimony as to her financial condition at the time she purchased the Annuities. In light of her educational background, and her reliance on others for financial advice, this Court declines to infer from her failure to provide documents as to her financial condition

shortly before filing for bankruptcy that she purchased the Annuities more than four years earlier with intent to hinder, delay, or defraud creditors.  It should be noted that the trustee did not bring an action under § 727(a)(5) seeking to deny the debtor a discharge for her inability to explain the loss of assets to pay her liabilities.

In light of all the factors above, and for all the foregoing reasons, this Court does not find that the Annuities were purchased with the intent to hinder, delay, or defraud creditors.  Therefore, the  trustee's motion seeking to deny her those exemptions must be denied.

II.     Avoidance under 11 U.S.C. § 548(e)(1)

The trustee argues that he is able to avoid the debtor's transfers to purchase the Annuities under § 548(e)(1).

Section 548(e)(1) provides:

> [t]he trustee may avoid any transfer of an interest of the debtor in property that was made on or within 10 years before the date of the filing of the petition, if--
>
> (A)     such transfer was made to a self-settled trust or similar device;
>
> (B)     such transfer was by the debtor;
>
> (C)      the debtor is a beneficiary of such trust or similar device; and
>
> (D)      the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made, indebted.

11 U.S.C. § 548(e)(1).

The analysis of the debtor's intent to hinder, delay, or defraud under § 548 of the Bankruptcy Code and under New York law is identical. See In re Moore, 177 B.R. at 441 n.5 (actual intent under New York's Insurance Law and under § 548 are similar and were analyzed simultaneously); see also 5 COLLIER ON BANKRUPTCY ¶ 548.09A[3][d] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

In order to avoid the transfers to the Annuities pursuant to § 548(e)(1), the trustee must commence an adversary proceeding. See Fed. R. Bankr. P. 7001. Such relief may not be sought by motion. In any event, this Court has found that the debtor did not purchase the Annuities with actual intent to hinder, delay, or defraud her creditors.

## Conclusion

For the foregoing reasons, trustee's motion is denied in its entirety. A separate order will issue herewith.

Dated: Brooklyn, New York
February 19, 2008

*s/Carla E. Craig*
CARLA E. CRAIG
Chief United States Bankruptcy Judge